```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

CARRIAGE COURT CONDOMINIUM                     CIVIL ACTION
OWNERS ASSOCIATION, INC., ET
AL

VERSUS                                         NO: 07-7715

STATE FARM FIRE AND CASUALTY                   SECTION: "J" (3)
COMPANY

### ORDER AND REASONS

Before the Court is the plaintiffs' **Motion to Reopen and Remove and Replace Umpire in Appraisal (Rec. Doc. 28)**. This motion, which is opposed, was set for hearing on February 18, 2009 on the briefs. Upon review of the record, the memoranda of counsel, and the applicable law, this Court now finds, for the reasons set forth below, that plaintiffs' motion should be denied.

### Background Facts

This is a Hurricane Katrina case in which the plaintiffs are suing their wind policy insurer for additional payments for damage caused by the hurricane to a 70-unit condominium complex in Metairie, Louisiana. The policy issued by State Farm Fire and Casualty Company ("State Farm") has a limit of $4,800,000. State

Farm paid the plaintiffs $3,352,756.59. Unsatisfied with this amount, the plaintiffs filed suit. Subsequently, the plaintiffs filed a motion to invoke the appraisal process contained in the insurance policy and to stay the case. That motion was granted by the Court. Now, the plaintiffs are moving the Court to reopen the case for the sole purpose of replacing the umpire selected to referee the appraisal process.

In accordance with the appraisal provision of the insurance policy, each side selected an appraiser. The plaintiffs chose Russ Hart and the defendants selected Edward VanHoven. Pursuant to the policy, the two appraisers selected an umpire to resolve disputes between the appraisers. In selecting the umpire, the plaintiffs' expert, Hart, provided a list of five potential umpires and the defendants expert, VanHoven, presented a list of two possible appraisers. After interviewing potential candidates, Hart agreed to use umpire Grant Campbell, who was first identified by VanHoven. The two appraisers, along with Campbell, signed an Umpire Selection Agreement, which provided for paying Campbell at a rate of $150 per hour. The two appraisers have begun work to complete their appraisals. The plaintiffs' appraiser, Hart, suggested that the two appraisers work together in inspecting the subject condominiums. This idea was rejected by VanHoven and each appraiser is creating a separate and independent appraisal. At some point the umpire

suggested that he would like to inspect the condominiums himself, however this request was rejected by the plaintiffs who denied him access to the condominiums. Also, at some point the appraisers agreed to use the Xactimate program for determining costs for each of their appraisals. They agreed that cost estimates from the first quarter of 2007 should be used because this is the time period when State Farm was paying the plaintiffs for repairs. However, there are two Xactimate price lists that are available for that time period. One list is the published list and another is a list that was created by Xactimate and State Farm. According to the plaintiffs, the State Farm specific price list identifies higher per unit costs yielding larger estimates. The plaintiffs' appraiser has determined that using either Xactimate price list yields at least an additional $500,000 payment for the plaintiffs. The plaintiffs allege that State Farm's original adjusters manipulated the Xactimate price list that they were using at the time of the original adjustment in order to pay lower per unit prices than are stated on the published Xactimate price list. In the context of the appraisal, Hart and VanHoven dispute which Xactimate price list should be used in calculating the appraisal. The umpire has refused to resolve this disagreement until each appraiser has completed his independent appraisal. The umpire has indicated that once the two independent appraisals are complete he will resolve any

differences in the estimates, and that he will be free to use any available price list from the first quarter of 2007 and will not be limited to the Xactimate price lists.

**The Parties' Arguments**

The plaintiffs have brought this motion arguing that the umpire is neither competent or disinterested in the appraisal process and therefore should be removed. The plaintiffs contend that the umpire's refusal to decide which price list should be applied in the appraisal signifies the umpire's incompetence and bias towards State Farm. The plaintiffs believe that whenever a dispute arises between the two appraisers it must be resolved at that time by the umpire. However, the umpire in the subject appraisal has determined that he will not decide at this point whether a specific Xactimate price list applies to this appraisal. Instead, once the two appraisers complete their individual appraisals the umpire will use any price list, not just Xactimate price lists, to resolve pricing disputes between the two appraisers. The heart of the plaintiffs' argument is that they believe that using either the Xactimate published price list or the special State Farm Xactimate price list produces an estimate that shows that State Farm originally underpaid the plaintiffs by $500,000 because State Farm was manipulating the per unit prices contained in the Xactimate price list. The

plaintiffs allege that the umpire is interested in extending the appraisal process and making it needlessly lengthy and complicated so that he will be paid more.  Additionally, the plaintiffs suggest that this case is similar to a case pending before Judge Duval of this Court, captioned <u>Kathleen Schafer, et al.v. State Farm Fire and Casualty Co.</u>, Civil Action No. 06-8262.  The plaintiffs suggest that this putative class action of homeowners is similar because it also involves allegations of State Farm manipulating Xactimate price lists.

 The defendant in opposition argues that the plaintiffs have not presented any evidence that the umpire is biased or incompetent.  Instead, the plaintiffs only complaint is that the umpire has determined that the two separate appraisals should be completed before he becomes involved in settling pricing disputes.  The defendant contends that there is simply no evidence that the umpire is biased, and that the plaintiffs are only complaining because the appraisal that they sought will take longer than they would like.  Also, the defendant argues that the plaintiffs' motion is premature.  The plaintiffs want the umpire to make a decision that will prejudge and short circuit the appraisal process by which each appraiser creates an estimate and differences between the two are resolved by the umpire.  Lastly, the defendants assert that the <u>Schafer</u> case has nothing to do with the issue before the Court in this motion.

The plaintiffs filed a short reply memorandum that reiterates their arguments in support of the motion.

## **Discussion**

The plaintiffs have brought this motion prior to the completion of the appraisal in this case. Previously, the plaintiffs moved to stay this case and pursue the appraisal option contained in the insurance policy. The Court granted that motion and administratively closed the case to permit the appraisal. The appraisal provision in the policy provides:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

6

> a. pay its chosen appraiser; and
>
> b. bear the other expenses of the appraisal and umpire equally.

Ex. D, Rec. D. 9. Each party selected their appraiser and the two appraisers selected the umpire. As each appraiser has been working on their independent appraisal a conflict has arisen regarding the pricelist to be used to determine the total amount of the appraisal. The umpire has determined that he will resolve this dispute, but not until each appraiser has completed his independent appraisal. Based on the failure of the umpire to immediately resolve the pricelist dispute the plaintiffs argue that the umpire is biased and incompetent and should be removed by the Court.

The parties have not identified and the Court has not found any case law setting forth a standard under Louisiana law for the removal of an umpire during an appraisal and before an award. In pressing this motion, the plaintiffs rely on the secondary source, Couch on Insurance, as setting forth the standard that bias, prejudice, or undue interest in a dispute may warrant the removal of an arbiter. Pl.'s Mem. in Supp., Rec. D. 28; see 15 Lee R. Russ, Couch on Insurance § 211:38 (3d ed. 2009). Further, the plaintiffs rely on the same source for the proposition that a court may remove an arbiter, or umpire, when that person refuses to act as he is required to as a part of the appraisal process.

Pl.'s Mem. in Supp., Rec. D. 28; see 15 Lee R. Russ, Couch on Insurance § 211:41 (3d ed. 2009). Although it is not clear whether this Court has the authority to remove an umpire in the midst of an ongoing appraisal process, it is certain that if the Court were to take such an action it would be necessary for the plaintiffs to identify some evidence that the umpire has acted in a biased or prejudiced manner. In the analogous situation where a party challenges the use of a particular appraiser, courts have required evidence be presented showing that the appraiser's honesty or integrity is suspect. See Dawes v. Continental Ins. Co. of City of New York, 1 F. Supp. 603, 605 (E.D. La 1932); Prien Props., LLC v. Allstate Ins. Co., No. 07-845, 2008 WL 1733591, at *3 (W.D. La. Apr. 14, 2008).

In the present case the plaintiffs argue that the current umpire, who was selected by both appraisers, should be removed because he has refused to decide which pricelist should be used until each appraiser has completed his independent appraisal. More specifically, the plaintiffs complain that the umpire has not immediately selected a Xactimate pricelist from the first quarter of 2007. Based solely on this decision the plaintiffs accuse the umpire of being incompetent and interested in helping State Farm achieve a favorable outcome in the appraisal. Further, the plaintiffs suggest that the umpire's failure to make an immediate decision is the result of his wanting to prolong the

appraisal to make a larger fee.  However, other than these mere allegations the plaintiffs have presented no evidence that would support the removal of the umpire, which each parties' appraiser selected as a part of the appraisal process sought by the plaintiffs.  The umpire has made clear that he intends to resolve any pricing disputes, but will not do so until each appraiser has completed his independent appraisal.  The umpire has not refused to resolve this dispute, rather he has refused to resolve the dispute in the precise manner that the plaintiffs would like.  The position of the umpire appears to be entirely consistent with the appraisal process set forth by the policy, which provides that "[t]he appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire."  Ex. D, Rec. D. 9.

Furthermore, in the reply memorandum in support of their earlier motion to stay the case and conduct the appraisal the plaintiffs explicitly stated that they were only requesting an appraisal for the purpose of valuation.  "To the extent necessary, the plaintiff(s) agrees, states and so stipulates that its Motion for Appraisal only requests that the appraisers place a value on the amount of the loss caused by the winds and wind driven rains of Hurricane Katrina."  Pl.'s Reply Mem., Rec. D. 25.  By seeking to force the umpire to select a specific Xactimate pricelist that both appraisers must follow, the

9

plaintiffs in fact seek to circumvent the entire appraisal process that they requested.  The plaintiffs repeatedly make this point in their memorandum and reply memorandum in support of the present motion by arguing that if the umpire would select an Xactimate pricelist now, instead of waiting for the completion of the individual appraisals, then it would become obvious that the plaintiffs are immediately owed at least an additional $500,000.  Determining any additional amount that the plaintiffs are owed as a result of valuation issues with the original State Farm adjustment of the claim is the precise purpose of the appraisal process.  The plaintiffs requested this process and it must be permitted to run its course.  The umpire has stated that after the appraisers have completed their independent appraisals he will resolve any pricing differences.  There is no evidence that the umpire is motivated by bias or incompetence, and the umpire's position seems to be more consistent with the policy's appraisal provision then the position taken by the plaintiffs in this motion.  If after the completion of the appraisal process the plaintiffs have some evidence of bias or incompetence on the part of the umpire then they may make that argument to the Court.  However, this motion presents no such evidence and there is no reason at this time for the Court to intervene in the ongoing appraisal process.

Finally, it is not clear to the Court what connection there is between this motion and the Schafer case pending before Judge Duval.  Obviously the plaintiffs believe that State Farm improperly adjusted their claim by manipulating the Xactimate pricelist used at the time of the adjustment.  However, this belief has no bearing whatsoever on whether this case should be reopened to remove the umpire in the ongoing appraisal process.  Accordingly,

**IT IS ORDERED** that the plaintiffs' **Motion to Reopen and Remove and Replace Umpire in Appraisal (Rec. Doc. 28)** is hereby **DENIED.**

New Orleans, Louisiana, this 28th day of May, 2009.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE